IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LYNN HARASIN JOHNSON,

                      **Plaintiffs,**

    v.                             **1:04-cv-1320-WSD**

GEORGIA TELEVISION
COMPANY d/b/a WSB-TV,

                      **Defendants.**

## ORDER

This matter is before the Court in further consideration of Defendant Georgia Television Company d/b/a WSB-TV's ("WSB") Motion in Limine to Preclude the Introduction of Evidence Regarding Claimed Damages (the "Damages Motion") [97]. This motion preliminarily was addressed at the Pretrial Conference conducted on May 11, 2006.

## BACKGROUND

In the Damages Motion, WSB seeks to limit damages to those allowed by 29 U.S.C. § 2617(a)(1) (2005), specifically, lost wages, salary or employment benefits or actual monetary losses resulting directly from a violation of the statute. (Damages Mot. at 1-2.) During the Court's consideration of this motion at the

Pretrial Conference, counsel for Ms. Harasin stated that she seeks as damages amounts which were not paid to her as a result of her having to "go out on disability" around Thanksgiving of 2004.  (Transcript of Pretrial Conference ("PTC Tr.") [114] at 18.)  Plaintiff claims her disability was aggravated by WSB's wrongful assignment of her to the morning shift.  (Id. at 18-19.)  The assignment, Plaintiff claims, was in retaliation for requesting Family and Medical Leave Act ("FMLA") leave for her claimed fibromyalgia.  (Id. at 8-9.)  Plaintiff asserts this early morning work resulted in an aggravation of her fibromyalgia, which caused her to be disabled.  (Id. at 19-20.) This disability, in turn, caused her to claim disability benefits which, under her disability plan, were not paid in January 2005 and which paid her only 70% of her salary beginning on April 26, 2005.  (Id. at 18.)  She argues this salary shortfall was a loss of wages which resulted from the wrongful retaliation she alleges.  (Id. at 18-19.)

At the Pretrial Conference, counsel for Ms. Harasin announced that Plaintiff intends to call Dr. Wilson "for the purpose of talking about the impact of her working on the 3:00 a.m. shift and its effect on her health."  (Id. at 19.)  This testimony is intended to support Plaintiff's claim that the alleged retaliatory assignment resulted in her disability and her resultant loss of income.  (Id. at 21.)

Plaintiff claims this loss is compensatory economic damage.  (Id.)

Although counsel had not discussed this damage theory in Plaintiff's submissions filed with the Court, counsel referred the Court to two cases upon which Plaintiff relies to support her damage theory and the introduction of Dr. Wilson's testimony at trial.  (Id. at 20-25.)  These cases are the Fourth Circuit's decision in Nichols v. Ashland Hosp. Corp., 251 F.3d 496 (4th Cir. 2001) and the Northern District of Indiana District Court's opinion in Hite v. Biomet, Inc., 53 F. Supp. 2d 1013 (N.D. Ind. 1999).[1]  The Court has reviewed these opinions, Plaintiff's damages theory, and the Defendant's response, and discusses them below.

## DISCUSSION

In Nichols, plaintiff brought an action against her former employer arising from the plaintiff's termination of employment.  Nichols, 251 F.3d at 499.  The claims included an alleged violation of the FMLA.  Id.  Specifically, plaintiff claimed she was discharged from her employment as a result of her request for

---

[1]  In Plaintiff's Response in Opposition to Defendant's Motion in Limine to Preclude the Introduction of Evidence Regarding Claimed Damages ("Resp. in Opp'n") [108], Plaintiff discussed these decisions, but only for the proposition that Plaintiff is entitled to front pay.  (Resp. in Opp'n at 8-10.)

FMLA leave to recover from brain surgery.  Id.  A physician testified at trial regarding the health effects of her termination.  Id. at 500.   The evidence was introduced to explain why plaintiff had not sought employment to mitigate her back pay damages.  Id. [2]  The Court of Appeals in Nichols considered the physician's testimony only in connection with the limited issue presented by the defendant in the appeal:  whether defendant "was entitled to a new trial because [plaintiff] produced no evidence to rebut [defendant's] defense that [plaintiff] failed to mitigate her damages by seeking other paid employment."  Id. at 503.  The Nichols court did not consider whether back pay can be awarded where an FMLA violation allegedly impacts a plaintiff's health such that the plaintiff is unable to work, resulting in a loss of income.  That issue simply was not presented to the court in Nichols and thus Nichols does not support allowing Dr. Wilson to testify in support of Plaintiff's loss wages theory in this case.

In Hite, plaintiff claimed that upon her return from FMLA leave to recover from complications from a pregnancy, she was submitted to a hostile work

---

[2]This doctor testified that plaintiff "was 'unable to function' in a paying job" and he attributed this inability to depression and a panic disorder caused by her termination.  Id. at 503.  The Court noted that back pay was awarded at trial but did not discuss the basis for the award nor was it asked to evaluate whether it was allowed under the statute.

environment which she contended was retaliation for taking leave.  <u>Hite</u>, 53 F.

Supp. 2d at 1015.  This retaliation, she alleged, caused her to suffer stress and

anxiety resulting in her physician placing her on medical leave.  <u>Hite v. Biomet,</u>

<u>Inc.</u>, 38 F. Supp. 2d 720, 726 (N.D. Ind. 1999) ("Hite I").[3]  While on subsequent

medical leave, Plaintiff applied for and received disability benefits which were

paid in the amount of 60% of her regular salary.  <u>Id.</u>  She claimed she was entitled

to back pay for the 40% of the salary she lost when she took leave due to

retaliation she allegedly suffered when she returned from leave for her problem

pregnancy.  <u>Hite</u>, 53 F. Supp. 2d at 1024.  In considering this claim, the Court in

<u>Hite</u> summarily held:  "While on the leave of absence, Hite received short-term

disability payments which  supplemented her normal paycheck at 60% of her

normal salary.  Thus, at a minimum, Hite is entitled to receive the 40% of her

salary which she did not receive as a result of Biomet's retaliatory conduct."  <u>Id.</u> at

1024-25.  While this conclusory holding is confusing on its face,[4][5]  Plaintiff here

---

[3]  The Court relied on the statement of facts in its earlier opinion, <u>Hite I</u>.

[4]  The opinion is not clear as to why, if the payment "supplemented" her normal salary, she would be paid an additional 40%.

[5]  Plaintiff did not comply with Biomet's notification procedures while she was on her latest medical leave, and ultimately was terminated from her

relies on it for the proposition that she is entitled to her salary for January 2005,

and for the difference between her disability payments and her salary for the period

May 26, 2005 through September 15, 2005.[6]  (Damages Mot. at 3.)  This decision,

albeit confusing, can be interpreted as providing some theoretical support for

Plaintiff's damages argument.

Defendants argue that Dawson v. Leewood Nursing Home, Inc., 14 F.

Supp. 2d 828 (E.D. Va. 1998) should apply.  (Damages Mot. at 8.)  In Dawson,

plaintiff claimed that defendant violated her FMLA rights when defendant refused

to allow her to reassume the position she had when she went on FMLA leave.

Dawson, 14 F. Supp. 2d at 830.  This refusal, she claimed, was a major cause of

severe and disabling cardiac and pulmonary symptoms she suffered, which

precluded her from returning to work.  Id.  She alleged damages for "present and

future lost wages and employment benefits" resulting from her resultant disability.

Id.  That is, she sought:  "to recover future lost wages and employment benefits on

---

employment.  Hite, 53 F. Supp. 2d at 1017.  Plaintiff claimed this termination also
was retaliatory.  Id. at 1016.  The Court disagreed and held the termination
prohibited plaintiff from claiming she was entitled to continue to receive damages
as a result of the earlier retaliation.  Id. at 1025.

[6] Plaintiff apparently alleges these back pay damages "start[ed] accruing
again on December 15, 2005."  (Damages Mot. at 3.)

the theory that the defendants' alleged failure to restore her to her position as [Director of Nursing] or to an equivalent position proximately caused her to become incapacitated, thereby losing her future earning capacity." Id. at 833.  In denying plaintiff's recovery, the Court held: "[E]ven if we assume that plaintiff could actually prove causation, we find no legal authority within the FLMA upon which to allow her to recover for the injuries she sustained as a result of the [cardiac and pulmonary symptoms] she suffered on December 9, 1996." Id. at 834. Against the backdrop of the cases cited by the parties, the Court independently reviews the requirements of the FLMA statute and the damages it allows.

The FLMA provides for specific damages that may be recovered.  The Act provides that an employer is liable for:

> (A) for damages equal to—
>
> (i) the amount of—
>
> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>
> (II) in the case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of

> providing care, up to a sum equal to 12 weeks of
> wages or salary for the employee;
>
> (ii) the interest on the amount described in clause
> (i) calculated at the prevailing rate; and
>
> (iii) an additional amount as liquidated damages
> equal to the sum of the amount described in clause
> (i) and the interest described in clause (ii) . . . ; and
>
> (B) for such equitable relief as may be appropriate,
> including employment, reinstatement, and
> probation.

29 U.S.C. § 2617.

The Eleventh Circuit has not squarely addressed the issue Plaintiff presents, although it has generally considered what damages may be recovered under subsection 27(a)(1)(A)(i)(I) and specifically has stated they are limited.  In Nero v. Industrial Molding Corp., 167 F.3d 921, 930 (11th Cir. 1999), the Eleventh Circuit stated that damages under the subsection are "limited to an amount equal to the lost salary or wages, lost employment benefits, or any 'other compensation' that is indicative of a *quid pro quo* relationship between an employer and an employee." The statute, and § 2617(a)(1) specifically, "does not provide for recovery of general or consequential damages."  Id.  A "plaintiff may not recover in the absence of damages."  Graham v. State Farm Mutual Ins. Co., 193 F.3d 1274, 1284

8

(11th Cir. 1999).

Viewing the retaliation alleged here, in the context of the *quid pro quo* of the employment relationship, the retaliation alleged did not result in any diminution of Plaintiff's income.  Indeed, Plaintiff continued to be paid her full salary as *quid pro quo* for the services she was expected to perform, even if on a different shift.

Viewed practically, even if there was retaliation, Plaintiff was paid her salary and thus did not suffer any damage when she was reassigned to her new shift.  The Court further finds that the recovery Plaintiff  seeks is in the nature of consequential damages which may not be recovered in an action under the FMLA.

Accordingly, Dr. Wilson's testimony is not relevant and therefore is not allowed.[7] [8]

---

[7]  Even if there were an issue on which Dr. Wilson's testimony might be probative, its prejudice effect otherwise requires it to be excluded under Rule 403 of the Federal Rules of Evidence.

[8]  Plaintiff's real complaint appears to be that WSB was aware of Plaintiff's alleged disability and, after repeated requests,  refused to reassign Plaintiff to her former shift.  What Plaintiff is alleging is that WSB refused to accommodate a disability of which it was aware.  If a claim had been asserted under a different statute alleging the disability and a failure to accumulate it,  Mr. Wilson's testimony might have been germane.  There not being a disability claim here, Dr. Wilson's testimony is not relevant.  Plaintiff cannot use the FMLA as a vehicle to seek damages for what is essentially a claim for disability discrimination.  See S. Comm. on Labor & Human Servs., 103d Cong., Family and Medical Leave Act

Based on the analysis above,

**IT IS HEREBY ORDERED** that Defendant Georgia Television Company d/b/a WSB-TV's ("WSB") Motion in Limine to Preclude the Introduction of Evidence Regarding Claimed Damages [97] is **GRANTED** and Dr. Wilson's testimony is precluded as is any evidence of the difference between Plaintiff's salary and disability payments she received.

**SO ORDERED** this 7th day of June, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

of 1993, S. Rep. No. 103-3, at 23 (1993).  ("[T]he leave provisions of the Family and Medical Leave Act are wholly distinct from the reasonable accommodation obligations of employers covered under the Americans with Disabilities Act.")